UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMES DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:16cv271 SNLJ |
| | ) |
| DUNHAM'S ATHLEISURE | ) |
| CORPORATION, *et al.* | ) |
| | ) |
| Defendants. | ) |

## CORRECTED MEMORANDUM AND ORDER

Plaintiff bought a used rifle from Dunham's Athleisure Corporation d/b/a Dunham's Sports ("Dunham's") on November 14, 2015. The firearm had been sold to Dunham's by firearms distributor Century International Arms, Inc. ("Century"). Plaintiff claims defendants Dunham's and Century are liable for injuries he received when plaintiff used the firearm. Defendant Dunham's has moved to dismiss (#3).

### I. Factual Background

According to the complaint, plaintiff bought a Mosin-Nagant Model 91/30 Rifle from Dunham's in Poplar Bluff, Missouri. The next day, plaintiff was using the rifle when he depressed the trigger and it exploded in close proximity to his head and severely injured his face. Plaintiff filed this lawsuit bringing six counts against the two defendants --- defendant Dunham's (the store where he purchased the rifle) and defendant Century (the firearms distributor that sold the used rifle to Dunham's). Dunham's has moved to dismiss the three counts against it, which are as follows:

- Count I for Negligence, alleging that Dunham's was negligent in its development, packaging, and/or sale of the rifle;

- Count II for Strict Liability, alleging that the rifle Dunham's sold was unreasonably dangerous and defective when put to reasonable use; and

- Count III for Breach of Warranty, based on express or implied warranty that the rifle was reasonably fit for the purpose and use for which it was intended. Plaintiff alleges that Dunham's made an express warranty that "no injury can occur if the barrel is pointed in a safe direction."

Dunham's has moved to dismiss those claims against it under Federal Rule of Civil Procedure Rule 12(b)(6).

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir.

2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## III. Discussion

Defendant Dunham's contends this Court should dismiss the claims against it under § 537.762 RSMo, which provides that

1. A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim as provided in this section.

2. This section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim.

Section 537.762 RSMo is known as the "innocent seller" statute. "The purported purpose of section 537.762 is to allow a seller in the stream of commerce to be released at an early stage of the litigation, rather than wait until the completion of litigation to obtain indemnity." *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 181-82 (Mo. App. 1997) (internal quotation omitted).

Dunham's asserts that the innocent seller statute applies here because its liability is based solely on its status as a downstream seller in a products liability action, citing, *e.g.*, *Wichmann v. Proctor & Gamble Mfg. Co.*, 4:06CV1457 HEA, 2006 WL 3626904, at *2 (E.D. Mo. Dec. 11, 2006). In *Wichmann*, the court dismissed a grocery store that sold plaintiff tampons manufactured by another defendant, the tampon manufacturer Proctor & Gamble, that made the plaintiff sick. The grocery store defendant was dismissed because it was merely the "innocent seller" under § 537.762 RSMo. *Id.* The grocery store could not be liable under a strict liability theory under the statute, and plaintiff's

negligence theory also failed because the grocery store could have no duty to warn in light of the federal regulations requiring warnings on the product box itself. *Id.*

Thus, Dunham's explains, the negligence and strict liability claims against it should also be dismissed under § 537.762 RSMo. Dunham's did not develop, design, or manufacture the firearm, nor did it adulterate the firearm in any way --- it was, Dunham's says, merely a downstream seller of the firearm.

Plaintiff counters that Dunham's provided its own marketing and safety information, allegedly warranting that "no injury can occur if the barrel is pointed in a safe direction." This language was found on the "Safety Notice to Customers Purchasing Firearms" that Dunham's provided to plaintiff and which plaintiff signed. (#25-1.) Plaintiff argues that his claims against Dunham's are not based solely on Dunham's status as a "seller in the stream of commerce." Plaintiff concedes that, had Dunham's not made the warranties it made, that Dunham's would be entitled to dismissal of Count II's strict liability claim. But Dunham's did give additional direction, warnings, and marketing information, and plaintiff claims Dunham's is liable as a result.

The Safety Notice that plaintiff signed when he bought the firearm at issue stated

-You should always keep the barrel pointed in a safe direction, even when dry firing, loading or unloading. In the event of an accidental discharge, no injury can occur if the barrel is pointed in a safe direction.

(#25-1.) Although it may be a stretch to label that statement as a "warranty," the Court must draw all reasonable inferences in favor of the plaintiff. Defendant points out that, in that same document, it specifically disclaimed any warranty for used firearms such as the rifle here:

4

> **SAFETY NOTICE TO OUR CUSTOMERS WHO PURCHASE VINTAGE FIREARMS**: SOLD AS IS/NO WARRANTY (EXPRESS OR IMPLIED)  _JND_  (INITIAL).  This firearm is old and used.  The firearm has been in storage and packed in oil, grease, and sawdust for many years. This firearm must be thoroughly inspected and cleaned before using, which is your sole responsibility  _JND_  (INITIAL).  At a minimum, the following guidelines must be completed before operating your firearm:  (a) Clean the entire firearm.  Ensure all grease, oil, and sawdust have been removed from all exterior and interior area.  (b) Carefully inspect the barrel.  Be sure the barrel is clear of obstructions before shooting.  Open the action and make sure there's no ammunition in the chamber.  Check the barrel for any obstructions or debris. Even a small about of mud, excess lubricant, or grease in the bore can dangerously increase pressure and cause the barrel to bulge or burst when firing.  Use a cleaning rod and patch to wipe away anti-rust compounds or any other residue or obstructions in the barrel.  Never try to shoot out an obstruction by loading a shelling firing!

(*Id*.)  That document also included the following warranty notice, in all capital letters, just above the signature line:

> **WARRANTY NOTICE:**
> Except as may otherwise be provided by the manufacturer or supplier, which shall be the sole responsibility of the manufacturer or supplier, Dunham's disclaims all warranties, either express, implied, written or oral, including but not limited to the implied warranty of merchantability and fitness for a particular purpose.  Dunham's also disclaims any liability for any special, incidental, or consequential damages whatsoever.  Depending on the applicable state, the above exclusions or limitations may not apply.

(*Id.* (all caps formatting removed).)

But those disclaimers may conflict with Dunham's assertion that "no injury can occur" if the gun is "pointed in a safe direction."  Plaintiff also alleges that Dunham's is liable for failure to properly instruct plaintiff, e.g., and that Dunham's was negligent in the marketing and sale of the firearm, which, again, are allegations that may take the case out of the purview of the innocent seller statute.  Although it is a close call, the Court

5

holds that plaintiff's allegations are sufficient to withstand defendant Dunham's motion to dismiss.

## IV. Conclusion

Defendant Dunham's motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Dunham's motion to dismiss (#3) is **DENIED.**

Dated this  11th  day of April, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE